IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELECT PORTFOLIO SERVICING, et al., | No. C 12-0334 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANTS CHU AND CORPORATE COUNSEL LAW GROUP'S MOTION FOR DETERMINATION OF GOOD FAITH SETTLEMENT** |
| v. | |
| ABRAHAM VALENTINO; JOHN CHU; CORPORATE COUNSEL LAW GROUP, LLP; NESZHAO CONSULTING COMPANY, LLC; KEVIN NESBITT, | |
| Defendants. | |

Currently before the Court is the motion by defendants John Chu and Corporate Counsel Law Group ("CCLG") for determination of good faith settlement. The other defendants in this action have not opposed the motion. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for August 3, 2013. Having carefully considered the papers submitted, the Court hereby GRANTS defendant's motion, for the reasons set forth below.

**BACKGROUND**

This case concerns allegations of fraud in a short sale of a home in Tiburon, California. The complaint alleges that in 2006, defendant Valentino purchased a home in Tiburon, CA, using a $5.1 million loan secured by a Deed of Trust on the property. In January 2009, a Notice of Default on the property was recorded in the Office of the Recorder of Marin County, California, beginning non-judicial

foreclosure proceedings. In May 2009, Valentino, through his lawyers – moving defendants here, Chu and CCLG – commenced a civil action in Marin County Superior Court against various entities involved in the lending, loan servicing and foreclosing process, challenging the legality of the foreclosure.[1] In September 2011, that action was settled; part of the settlement agreement was that foreclosure proceedings were halted to allow Valentino seven months to complete a short sale of the property. In October 2011 and November 2011, moving defendants Chu and CCLG presented terms of a proposed short sale of the property to the interested parties in the Marin County lawsuit, including Select Portfolio Servicing, Inc. ("SPS," the plaintiff here), which was approved in December 2011.

The proposed short sale was never consummated, because plaintiff SPS was informed by the real estate agent for the proposed short sale buyers that the sale was fraudulent, and that it involved two different sets of closing documents. The closing documents given to SPS for its review provided that no proceeds from the sale would be directed to the attorneys – moving defendants Chu and CCLG – or would be used to satisfy any junior liens on the property. The second set of documents, which reflected a higher purchase price than the documents presented to SPS, provided that some proceeds would go to the attorneys as well as other junior lien holders.

This federal lawsuit followed. Plaintiffs allege fraud in the would-be short sale of the Tiburon home in that defendants intended the second set of documents to be recorded as the actual transaction. Defendant Abraham Valentino was the owner of the home during all times relevant to this action; co-defendants John Chu and his law firm, CCLG, were Valentino's attorney in the California state court action. Co-defendants Neszhao and Nesbitt were the prospective buyers of the home at issue.

In the first amended complaint ("FAC"), U.S. Bank was with joined SPS as a plaintiff, and claims were asserted for: (1) intentional misrepresentation; (2) false promise; (3) negligent misrepresentation; (4) civil conspiracy to commit fraud; (5) tortious interference with prospective economic advantage against Neszhao and Nesbitt; and (6) breach of contract against Valentino. Plaintiffs allege that defendants submitted to SPS a revised short sale proposal that defendants had "no

---

[1] *See Valentino v. Quality Loan Service Corp. et al.*, Marin Superior Court Case No. CIV 092396. Dkt.42, Chu Aff., Ex. A. QLSP was the original trustee on the Deed of Trust. Dkt. 42, Chu Aff. ¶4.

2

intention of actually performing." *Id.* at ¶ 3. SPS asserts that it relied upon defendants' representations and devoted time and expense toward reviewing the purported short sale proposal and refrained from proceeding with efforts to foreclose the property, thus incurring monthly carrying costs of at least $32,346.20 for the loan. *Id*. ¶¶ 46-47, 61-62. For each of their first four causes of action, plaintiffs claim damages for $266,077 and punitive damages for $2,394,693. Plaintiffs also claim $72,000 in damages for their breach of contract claim against Valentino. *Id.,* Prayer for Relief ¶¶1-7.

Chu and CCLG moved to dismiss plaintiffs' FAC, asserting that plaintiffs' claims were barred as a matter of law by the *Noerr-Pennington* doctrine because the allegedly fraudulent conduct arose from their petitioning activity in the foreclosure action. In the alternative, they argued that the FAC should be stricken as a SLAPP suit under California Code of Civil Procedure § 425.16 for the same reason. Chu and CCLG further argued that the conduct giving rise to plaintiffs' claims is absolutely privileged by the California Civil Code § 47(b) litigation privilege. The Court rejected all three arguments and denied Chu and CCLG's motion to dismiss. Chu and CCLG appealed to the U.S. Court of Appeals for the Ninth Circuit and this Court subsequently stayed this case pending resolution of that appeal.

As a result of the parties' participation in the Ninth Circuit's compulsory mediation program, Chu, CCLG, and SPS have reached a settlement. Chu and CCLG will pay SPS $40,000 in exchange for dismissal of all claims against them. Chu and CCLG now move the Court for a determination of good faith settlement, thereby releasing them from any future equitable indemnity or contribution claims by the non-settling defendants.[2]

**LEGAL STANDARD**

Under California law, "[w]here a release, dismissal with or without prejudice or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort . . . [i]t shall discharge the tortfeasor to

---

[2] By settling the case, Chu and CCLG are no longer pursuing their appeal to the Ninth Circuit. *See* Mot. at 12 (Dkt. 75 at 16). Accordingly, the Court hereby LIFTS the stay imposed by the Court's December 12, 2012 order staying the case while on appeal. *See* Dkt. 67.

3

1 whom it is given from all liability for any contribution to any other tortfeasors." Cal. Civ. Pro. § 877.
2 As a check on the validity of settlement agreements that might affect joint tortfeasors not a party to the
3 settlement, California law further requires the court to make a determination that a settlement has been
4 entered in good faith before that settlement can become final. *See* Cal. Civ. Pro. § 877.6. Section 877.6
5 allows a party to a proposed settlement to move the court for an order making such a determination.[3]
6 *See id.* That section provides further that "[a] determination by the court that the settlement was made
7 in good faith shall bar any other joint tortfeasor from any further claims against the settling tortfeasor
8 for equitable comparative contribution, or partial or comparative indemnity, based on comparative
9 negligence or comparative fault." *See* Cal. Civ. Pro. § 877.6(c).

10 A good faith settlement is one within "the reasonable range of the settling tortfeasor's
11 proportional share of comparative liability for the plaintiff's injuries." *Tech-Bilt, Inc. v. Woodward-*
12 *Clyde & Assoc.*, 38 Cal. 3d 488, 499 (1985). To determine whether a proposed settlement fits that
13 description, the court should consider: (1) a rough approximation of the settlor's proportionate liability;
14 (2) the amount of the settlement; (3) the fact that a settlor should pay less in settlement that the amount
15 of damages for which the settlor would be liable at trial; (4) the financial condition of the settling
16 defendant and insurance policy limits, if any; (5) allocation of the settlement proceeds among the
17 plaintiffs; and (6) the existence or absence of any collusion, fraud or tortious conduct aimed to injure
18 the interests of any non-settling defendants. *Id.* at 499-500. The court assesses these factors "on the
19 basis of the information available at the time of settlement." *Id.* at 499.

20 Ultimately, "a defendant's settlement figure must not be grossly disproportionate to what a
21 reasonable person, at the time of the settlement, would estimate the settling defendant's liability to be."
22 *Torres v. Union Pacific R.R. Co.*, 157 Cal. App. 3d 499, 509 (1984). The court should approve even
23 a contested settlement, unless there is a showing "that the settlement is so far out of the ballpark in
24 relation to these factors to be inconsistent with the equitable objectives of the statute." *Tech-Bilt*, 38 Cal.

---

[3] Although section 877.6 is a procedural statute, not a substantive statute, the Ninth Circuit has determined that there is no federal procedural impediment to a district court's entertaining "a motion for an early determination of the good faith question," and so such a motion can be properly brought before the court. *Federal Savings and Loan Insurance Corp. v. Butler*, 904 F.2d 505, 511 (9th Cir. 1990).

4

3d at 499-500. The burden of proving that a settlement between the parties was not made in good faith is on the non-settling tortfeasor. Cal. Civ. Pro. § 877.6(d).

## DISCUSSION

### 1. Rough Approximation of the Settlor's Proportionate Liability

The FAC alleges that Chu and CCLG misrepresented the terms of the short sale during the period between resolution of the Marin County action in November 2011, and initiation of the federal action in January 2012. Thus, Chu and CCLG contend that they would only be liable for plaintiffs' alleged carrying costs of $32,346.20/month for the two intervening months – $64,982.40 total. Notwithstanding punitive damages alleged in the FAC, the settlement here of $40,000 represents approximately 63% of plaintiffs' overall damages claim. Thus, the Court finds that the proposed settlement roughly approximates Chu and CCLG's proportion of potential liability.

### 2. The Amount of the Settlement

Under California law, the defendant's "good faith will not be determined by the proportion his settlement bears to the damages of the claimant. For damages are often speculative, and the probability of legal liability therefore is often uncertain or remote." *Stambaugh v. Superior Court*, 62 Cal. App. 3d 231, 239 (1976). Rather, courts are to examine whether the settlement is grossly disproportionate to what a reasonable person at the time of settlement would estimate the settlor's liability to be. *City of Ground Terrace*, 192 Cal. App. 3d 1251, 1262 (1987).

The parties have settled for $40,000. The Court finds that the settlement amount is reasonable, especially given that Chu and CCLG may have only been found liable at trial for two-months of cover costs for a total of $64,982.40.

### 3. Settlor Should Pay Less in Settlement Than at Trial

This settlement was arrived at after significant litigation, including two amended complaints, two motions to dismiss for failure to state a claim, and an appeal to the Ninth Circuit. Having expended such time and money, the settling parties now seek to avoid continued expenses and a possible

expensive trial. Accordingly, the Court finds the amount of the settlement reasonable, given the fact that settling-defendants are allowed to receive a significant discount by settling, rather than proceeding to trial.

**4.     The Financial Condition of the Settling Defendant and Insurance Policy Limits**

Defendants Chu and CCLG are or were insured by Lawyer's Mutual Insurance Company for an amount in excess of the alleged damages. The parties' settlement agreement provides that Lawyer's Mutual shall directly pay the $40,000 settlement amount to SPS. Accordingly, this factor counsels in favor of approving the proposed settlement.

**5.     Allocation of the Settlement Proceeds Among the Plaintiffs**

Chu and CCLG are paying $40,000 to SPS. Although plaintiff U.S. Bank is not mentioned in the settlement agreement, it is represented by the same counsel as SPS. Chu and CCLG, thus, observe that there are no proceeds to allocate, because there is only one plaintiff for settlement purposes. Mot. at 12 (Dkt. 75 at 16). The Court finds that this allocation to SPS alone is reasonable.

**6.     Collusion, Fraud or Tortious Conduct**

*Tech-Bilt* instructs that courts are to consider the existence or absence of any collusion, fraud or tortious conduct aimed to injure the interests of any non-settling defendants. The facts presented show that the settlement here was reached through arms-length negotiations: the settlement occurred after the parties agreed to participate in the Ninth Circuit's compulsory mediation program. Thus, the settlement appears to have been made in absence of collusion, fraud, or tortious conduct, and no party has made allegations to the contrary. Accordingly, this factor counsels in favor of approving the proposed settlement.

**CONCLUSION**

In sum, application of the *Tech-Bilt* factors demonstrates that the proposed settlement is a good faith settlement under California law. Moreover, the Court finds that the settlement is neither "grossly

disproportionate" to a reasonable estimate of the Chu and CCLG's liability, nor is the settlement "so far out of the ballpark" to the *Tech-Bilt* factors that it is inconsistent with the objectives of section 877.

Accordingly, the Court hereby bars any present or potential joint tortfeasor from bringing any future claims against this settling defendants for equitable contribution or partial or comparative indemnity based on comparative negligence or comparative fault.

For the foregoing reasons, and for good cause shown, the Court GRANTS defendants Chu and CCLG's motion and determines that there was a good faith settlement.

**IT IS SO ORDERED.**

Dated: July 30 , 2013

SUSAN ILLSTON
United States District Judge